*E-FILED - 6/3/08*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| BARTOLO MULLEN, | ) | No. C 03-3676 RMW (PR) |
| | ) | |
| Plaintiff, | ) | PARTIAL DISMISSAL ORDER; ORDER OF SERVICE; DENYING PLAINTIFF'S PENDING MOTIONS; GRANTING PLAINTIFF'S REQUEST TO BE HELD TO LESS STRINGENT STANDARDS |
| v. | ) | |
| STEPHEN SURTSHIN, et al., | ) | |
| Defendants. | ) | |
| | ) | (Docket Nos. 36, 37) |

Plaintiff, proceeding pro se, filed a civil rights complaint pursuant to 42 U.S.C. § 1983 against Napa State Hospital ("NSH") and its staff concerning the conditions of his confinement. Plaintiff has been granted leave to proceed in forma pauperis in a separate order. The court initially granted plaintiff's motion to file an amended complaint and denied plaintiff's request for exemption from the Prison Litigation Reform Act ("PLRA") requirements. Thereafter, plaintiff filed a first amended complaint. Plaintiff then filed a motion to amend the complaint to include additional defendants and filed additional motions. On December 19, 2007, the court granted plaintiff's motion to amend and to file a second amended complaint, denied plaintiff's motion for the court to return plaintiff's computer and other property, denied

plaintiff's renewed motion for exemption from the PLRA, and denied plaintiff's application for a temporary restraining order and motion for relief from the requirements of Civil Local Rule 65-1(a)(1). Plaintiff filed a second amended complaint on January 10, 2008.

Plaintiff has filed a motion for the court to order service of process, a request for service of process, a request to be held to less stringent standards and a revised request for exemption from the PLRA requirements. The court GRANTS plaintiff's motion and request for service of process and request to be held to less stringent standards (docket no. 36, 37-1, 37-2) and DENIES plaintiff's revised request for exemption from the PLRA requirements (docket no. 37-3). The court will dismiss two of plaintiff's claims and order service of the second amended complaint on the named defendants as set forth below.

## DISCUSSION

A.     Plaintiff's Second Amended Complaint

    **1.     Standard of Review**

Federal courts must engage in a preliminary screening of cases in which prisoners seek redress from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). In its review the court must identify any cognizable claims, and dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. Id. at 1915A(b)(1),(2). Pro se pleadings must be liberally construed. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that a person acting under the color of state law committed a violation of a right secured by the Constitution or laws of the United States. West v. Atkins, 487 U.S. 42, 48 (1988).

    **2.     Plaintiff's Claims**

        **a.     Retaliation**

Plaintiff alleges that defendants Surtshin, Echols, White, Isadore, Benham, and Hepner were his "treatment team" from 2001 through 2003. Defendants created a "behavioral

management plan" for plaintiff which included placing him in seclusion if he filed complaints with the licensing board. These defendants conspired and retaliated against plaintiff for exercising his First Amendment right to file grievances and deprived him of his religion pursuant to defendants' additional "behavioral plans" entitled "Guidelines for Religious Services" and "Here are the expectations necessary for you to regain your privileges over time." Second Amended Complaint ("SAC") at 2.

Defendant Kuchmak retaliated against plaintiff for his calling a social worker a "bitch" by restraining plaintiff and forcing him to take mind altering psychiatric drugs. Kuchmak then falsified plaintiff's medical records and retaliated against plaintiff because plaintiff filed a complaint against her with the state medical board. SAC at 3-4. Defendant Fu punished and retaliated against plaintiff by placing him in a seclusion room for plaintiff's refusing to attend a treatment team conference and refusing to listen to defendant Fu. Id. at 5.

Plaintiff alleges that defendants Gallegos, Moraida and Foulk unlawfully seized his personal computer and other personal property in retaliation for plaintiff's filing complaints with the courts, the United States Justice Department, Patients Rights Clinic, the Citizens Commission on Human Rights and other outside agencies and organizations to expose the abuse, malfeasance and fraud at Napa State Hospital. SAC at 5-8. Plaintiff alleges that on December 29, 2007, Napa State Hospital Police Officers brought drug-sniffing dogs to search plaintiff's room in retaliation for his filing numerous complaints and grievances against the hospital. SAC at 20.

Retaliation by a state actor for the exercise of a constitutional right is actionable under 42 U.S.C. § 1983 even if the act, when taken for different reasons, would have been proper. Mt. Healthy City Bd. of Educ. v. Doyle, 429 U.S. 274, 283-84 (1977). Retaliation, though it is not expressly referred to in the Constitution, is actionable because retaliatory actions may tend to chill an individual's exercise of constitutional rights. Perry v. Sindermann, 408 U.S. 593, 597 (1972). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) an assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's

Partial Dismissal Order; Order of Service; Denying Plaintiff's Pending Motions; Granting Request to Be Held to Less Stringent Standards
P:\pro-se\sj.rmw\cr.03\Mullen676srvmisc       3

exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted); accord Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995); Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir. 1994) (same).

Prisoners may not be retaliated against for exercising their right of access to the courts. Schroeder v. McDonald, 55 F.3d 454, 461 (9th Cir. 1995); Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985) (retaliation for prisoner's work as jailhouse lawyer). This constitutional prohibition clearly includes retaliation for filing a complaint. See Soranno's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314 (9th Cir. 1989). The right of access to the courts extends to established prison grievance procedures. See Bradley v. Hall, 64 F.3d 1276, 1279 (9th Cir. 1995). Thus, a prisoner may not be retaliated against for using such procedures. See Rhodes v. Robinson, 408 F.3d 559, 567 (9th Cir. 2005); Bruce v. Ylst, 351 F.3d 1283, 1288 (9th Cir. 2003); Sprouse v. Babcock, 870 F.2d 450, 452 (8th Cir. 1989); Hines v. Gomez, 853 F. Supp. 329, 331-32 (N.D. Cal. 1994). The right to file a grievance is subsumed under the First Amendment right to petition the government for redress of grievances, see id. at 333, and protects both the filing, see id., and content, see Bradley, 64 F.3d at 1279, of prison grievances.

Liberally construing plaintiff's claims, the court concludes that plaintiff's allegations satisfy the pleading requirements for a First Amendment retaliation claim. The court will order service of this claim on the named defendants.

### b.   Mental Health Treatment and Conditions of Confinement

Plaintiff claims that defendant Surtshin changed plaintiff's psychiatric diagnosis I and did not provide this information to plaintiff, nor to other members of the treatment team. SAC at 2-3. This resulted in plaintiff and the treatment team's inability to work on plaintiff's actual mental diagnosis and proceed with his discharge criteria. Id. Plaintiff alleges that defendant Kuchmak falsified plaintiff's medical records by changing his mental health diagnosis and forced plaintiff to take injections of a powerful mind-altering drug, Thorazine. Id. at 3-4. Plaintiff requested assistance from Protection and Advocacy Inc. ("PAI"), the Director of Patients Rights

and the Patients Right Advocate, based upon his complaints of the conditions of confinement, medical care and treatment and retaliation at NSH. Plaintiff claims that defendants Blakemore, Mudgett, and Kessler failed to help plaintiff in their respective roles within these organizations and allowed the unconstitutional conditions at Napa State Hospital to continue. SAC at 9-11. Plaintiff claims that NSH has discontinued its internet use policy for non-LPS patients in violation of his right to equal protection rights and his rights under the First Amendment. SAC at 14-19.

Under the Due Process Clause of the Fourteenth Amendment, persons who have been involuntarily committed retain substantive liberty interests, which include the right to adequate food, shelter, clothing and medical care; safe conditions of confinement; and freedom from unnecessary bodily restraint. Youngberg v Romeo, 457 U.S. 307, 315-16 (1982). States also must provide civilly-committed persons with access to mental health treatment that gives them a realistic opportunity to be cured and released. Sharp v. Weston, 233 F.3d 1166, 1172 (9th Cir. 2000); cf. Oregon Advocacy Center v. Mink, 322 F.3d 1101, 1121 (9th Cir. 2003) (incapacitated criminal defendants have a liberty interest in receiving restorative treatment and an interest in freedom from incarceration).

Additionally, the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment. See Helling v. McKinney, 509 U.S. 25, 31 (1993). A mentally ill prisoner may establish unconstitutional treatment by prison officials by showing that the officials have been deliberately indifferent to his serious medical needs. See Doty v. County of Lassen, 37 F.3d 540, 546 (9th Cir. 1994); see also Hoptowit v. Ray, 682 F.2d 1237, 1253 (9th Cir. 1982) (mental health care requirements analyzed as part of general health care requirements). A serious medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. See Doty, 37 F.3d at 546; Capps v. Atiyeh, 559 F. Supp. 894, 916 (D. Ore. 1983) (inmate suffers Eighth amendment pain whenever he must endure untreated serious mental illness for any appreciable length of time).

Liberally construed, plaintiff has alleged cognizable claims of inadequate medical care and treatment and unconstitutional conditions of confinement in violation of the Eighth and Fourteenth Amendments. The court will order service of this claim on the named defendants.

### c.     **Plaintiff's Property Claim**

Plaintiff alleges that defendants Gallegos, Moraida and Foulk unlawfully seized his personal computer and other personal property without probable cause and pursuant to an invalid search warrant.

Ordinarily, due process of law requires notice and an opportunity for some kind of hearing prior to the deprivation of a significant property interest. Memphis Light, Gas & Water Div. v. Craft, 436 U.S. 1, 19 (1978). However, neither the negligent nor intentional deprivation of property states a due process claim under § 1983 if the deprivation was random and unauthorized, however. Parratt v. Taylor, 451 U.S. 527, 535-44 (1981) (state employee negligently lost prisoner's hobby kit), overruled in part on other grounds, Daniels v. Williams, 474 U.S. 327, 330-31 (1986); Hudson v. Palmer, 468 U.S. 517, 533 (1984) (intentional destruction of inmate's property). The availability of an adequate state post-deprivation remedy, e.g., a state tort action, precludes relief because it provides sufficient procedural due process. Zinermon v. Burch, 494 U.S. 113, 128 (1990) (where state cannot foresee, and therefore provide meaningful hearing prior to, deprivation statutory provision for post-deprivation hearing or common law tort remedy for erroneous deprivation satisfies due process); King v. Massarweh, 782 F.2d 825, 826 (9th Cir. 1986) (same). California law provides such an adequate post-deprivation remedy. Barnett v. Centoni, 31 F.3d 813, 816-17 (9th Cir. 1994) (citing Cal. Gov't Code §§ 810-895). Nor is a prisoner protected by the Fourth Amendment against the seizure, destruction or conversion of his property. Taylor v. Knapp, 871 F.2d 803, 806 (9th Cir.), cert. denied, 493 U.S. 868 (1989).

The court concludes that plaintiff's property claim is not cognizable under §1983 because plaintiff has an adequate state remedy for the random and unauthorized loss of his personal property. Accordingly, Plaintiff's property claim is DISMISSED as to all defendants without

1  leave to amend.

2          **d.**        **Law Library**

3      Plaintiff alleges that Napa State Hospital does not provide sufficient legal research
4  materials to prepare pleadings, appeals and other legal documents.  NSH has discontinued its
5  Westlaw subscription and replaced it with Touch Tonic Technologies' inadequate legal research
6  system.  Plaintiff claims that this system was discontinued in retaliation for NSH and other
7  mental hospital patients providing information to the U.S. Justice Department for the CRIPA
8  (Civil Rights of Institutionalized Persons Act of 1980) investigation in 2006.  Plaintiff states that
9  paper and envelopes are rarely sold and overpriced.  The pencils and pens provided are difficult
10 to write with.  Additionally, NSH recently prohibited all patients from purchasing and having
11 their own computers mailed to them.  SAC at 11-14.

12     The right of access to the courts is guaranteed to people who are involuntarily committed
13 to a mental institution, regardless of whether they are civilly committed after criminal
14 proceedings or civilly committed on the grounds of dangerousness.  See Cornett v. Donovan, 51
15 F.3d 894, 897 (9th Cir. 1995).  The right of access to the court is limited to the initiation of a
16 court action.  The state is not required to enable the prisoner to discover grievances or to litigate
17 effectively once in court.  See Lewis v. Casey, 518 U.S. 343, 354 (1996).

18     A plaintiff must allege an "actual injury" to court access, however, which consists of
19 some specific "instance in which an inmate was actually denied access to the courts."  Sands v.
20 Lewis, 886 F.2d 1166, 1171 (9th Cir. 1989).  Only if an actual injury is alleged does a plaintiff
21 state a claim for which relief can be granted.  Id.; see, e.g., Jenkins v. McMickens, 618 F. Supp.
22 1472, 1474-75 (S.D.N.Y. 1985) (complaint alleging certain documents pertaining to pending trial
23 confiscated and not returned too conclusory to support claim of denial of access to court).  To
24 prove an actual injury, the prisoner must show that the inadequacy in the prison's program
25 hindered his efforts to pursue a non-frivolous claim concerning his conviction or conditions of
26 confinement.  Lewis v. Casey, 518 U.S. at 354-55.  An impermissible hindrance might include
27 the dismissal of a prisoner's action for failure to satisfy some technical requirement because of

28

deficiencies in the prison's legal assistance program. Id. at 351.

While the Constitution does not require any particular number of pens or sheets of paper, it does require some. See Gluth v. Kangas, 951 F.2d 1504, 1510 (9th Cir. 1991). To state a claim, however, there must be a showing that the denial of the materials denied the prisoner the ability to perfect and pursue legal action, i.e. actual injury to court access. See id. at 1509 n.2; see also Allen v. Sakai, 48 F.3d 1082, 1089-90 & n.9 (9th Cir. 1995) (where state court requires all handwritten entries to be in black ink, ban on use of pens constitutes denial of access to court); King v. Atiyeh, 814 F.2d 565, 565 (9th Cir. 1987) (no established minimum postage that state must meet; focus of court is whether plaintiff has been denied meaningful access); Franklin v. Oregon, 563 F. Supp. 1310, 1331 (D. Or. 1983) (prisoner with 106 separate actions before court clearly has no trouble getting papers to court and claim dismissed as frivolous).

Indigent prisoners must also be provided with paper and pen to draft legal documents. See Bounds v. Smith, 430 U.S. at 824-25; Kershner v. Mazurkiewicz, 670 F.2d 440, 444 (3d Cir. 1982). The key here is indigence and, again, actual injury to court access. See Gluth, 951 F.2d at 1509 n.2. A prison's indigence policy which forces prisoners to choose between purchasing hygienic supplies and essential legal supplies does not comply with the constitutional requirements stemming from Bounds where actual injury is shown. Id. at 1508-09 & n

Here, plaintiff has failed to establish the requisite element of actual injury in his second amended complaint. Plaintiff's allegation of inadequacy of the law library has not deprived plaintiff of his ability to initiate any legal action, as plaintiff has filed two civil actions in this court. Moreover, plaintiff does not allege that he was prevented from filing this civil action or any other grievances. The court notes that plaintiff admits that he has filed numerous complaints with the courts, the United States Justice Department, Patients Rights Clinic, the Citizens Commission on Human Rights and other outside agencies and organizations to expose the abuse, malfeasance and fraud at Napa State Hospital. SAC at 5-8. Accordingly, plaintiff fails to state a claim upon which relief may be granted as to the denial of access to the courts claim. Because no further amendment to the complaint can cure the noted deficiency, this claim is DISMISSED

without leave to amend. However, the court will construe plaintiff's allegations concerning the discontinued use of Westlaw and the denial of legal materials as a cognizable claim of retaliation for plaintiff's redress of grievances under the First Amendment. The court will order service of this claim on the named defendants.

### e. Doe Defendants

Plaintiff alleges that NSH police officers retaliated against him by bringing a drug-sniffing dog to search his room on December 29, 2007. Plaintiff asks to add these officers as defendants in the instant civil rights action. SAC at 20. The use of Doe defendants is not favored in the Ninth Circuit. See Gillespie v. Civiletti, 629 F.2d 637, 642 (9th Cir. 1980). However, where the identity of alleged defendants cannot be known prior to the filing of a complaint the plaintiff should be given an opportunity through discovery to identify them. Id. Failure to afford the plaintiff such an opportunity is error. See Wakefield v. Thompson, 177 F.3d 1160, 1163 (9th Cir. 1999). Accordingly, the claim against defendant "Does" is dismissed from this action without prejudice. Should plaintiff learn defendant "Does" identities, he may move to file an amendment to the complaint to add them as named defendants. See Brass v. County of Los Angeles, 328 F.3d 1192, 1195-98 (9th Cir. 2003).

B.  Plaintiff's Request for Exemption from the PLRA and Request to be Held To Less Stringent Standards

Plaintiff has filed a request to be held to less stringent standards and a revised request to be granted an exemption from the requirements of the Prison Litigation Reform Act ("PLRA"). However, as stated in the court's previous orders denying plaintiff's PLRA exemption request, the court concludes that plaintiff falls within the definition of a "prisoner" under the PLRA because individuals who at the time they seek to file their civil actions are detained as a result of being accused of, convicted of, or sentenced for criminal offenses are "prisoners" within the definition of 42 U.S.C. § 1997e. See Page v. Torrey, 201 F.3d 1136, 1140 (9th Cir. 2000) (individual civilly committed pursuant to California's Sexually Violent Predators Act is not a "prisoner" within meaning of 42 U.S.C. § 1997e).

1   Here, plaintiff was found not guilty by reason of insanity in a criminal action.  See California
2   Penal Code § 1026.  Therefore, plaintiff's confinement following a not-guilty-by-reason-of-
3   insanity determination appears to make him a prisoner for purposes of 28 U.S.C. §§ 1915 and
4   1915A.  See Grondorf v. Graziani, 2004 WL 231036 at *1 (citing to In re Franklin, 7 Cal.3d 126,
5   138, 143-44 (Cal. 1972) (class of persons committed to a state mental hospital following finding
6   of not guilty by reason of insanity was different from class of persons subjected to ordinary civil
7   commitment proceedings)).  Accordingly, plaintiff's revised request for exemption from the
8   PLRA (docket no. 37-3) is DENIED.
9          Plaintiff also requests that the court hold him to less stringent standards based upon his
10  pro se status and his detention at Napa State Hospital.  As discussed above, pro se pleadings must
11  be liberally construed.  Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).
12  The court has permitted plaintiff to amend his complaint twice and has liberally construed the
13  claims in the second amended complaint.  Therefore, the court has already complied with less
14  stringent standards in this action based on plaintiff's pro se status.  Plaintiff's request to be held
15  to less stringent standards (docket no. 37-2) is GRANTED.

## CONCLUSION

17  1.     Plaintiff's motion and request for service of process and request to be held to less
18  stringent standards (docket no. 36, 37-1, 37-2) are GRANTED.
19  2.     Plaintiff's revised request for exemption from the PLRA requirements (docket no.
20  37-3) is DENIED.
21  3.     Plaintiff's property claim is DISMISSED without leave to amend.
22  4.     Plaintiff's claim of denial of access to the courts is DISMISSED without leave to
23  amend.
24  5.     Plaintiff's claim against defendant "Does" - unnamed NSH police officers - is
25  DISMISSED from this action without prejudice and with leave to amend.
26  6.     The clerk of the court shall issue summons and the United States Marshal shall
27  serve, without prepayment of fees, a copy of the second amended complaint in this matter
28

(docket no. 35), all attachments thereto, and a copy of this order upon the following defendants: **Dr. Stephen Surtshin, Chris Echols, Patricia White, Sara Isadore, John Benham, Glena Hepner, Carol Ann Kuchmak, Julius Fu, Officer Jesus Gallegos, Tom Moraida, and Ed Foulk at Napa State Hospital; Catherine Blakemore - Executive Director of Protection and Advocacy, Inc. ("PAI"), Michelle Mudgett, Director of the Office of Patients Rights (PAI), and Susan Kessler - Patients Rights Advocate (PAI).** The clerk shall service a courtesy copy of the second amended complaint and a copy of this order on the Attorney General's Office.

7. No later than **sixty (60) days** from the date this order is filed, defendants shall file a motion for summary judgment or other dispositive motion with respect to the claims in the complaint as set forth above.

   a. If defendants elect to file a motion to dismiss on the grounds that plaintiff failed to exhaust his available administrative remedies as required by 42 U.S.C. § 1997e(a), defendants shall do so in an unenumerated Rule 12(b) motion pursuant to Wyatt v. Terhune, 315 F.3d 1108, 1119-20 (9th Cir. 2003), cert. denied Alameida v. Terhune, 540 U.S. 810 (2003).

   b. **If any defendant is of the opinion that this case cannot be resolved by summary judgment, he shall so inform the court prior to the date the summary judgment motion is due.**

8. Plaintiff's opposition to the dispositive motion shall be filed with the court and served on defendants no later than **thirty (30) days** from the date defendants' motion is filed.

   a. In the event defendants file an unenumerated motion to dismiss under Rule 12(b), plaintiff is hereby cautioned as follows:[1]

   > The defendants have made a motion to dismiss pursuant to Rule 12(b) of the Federal Rules of Civil Procedure, on the ground you have not exhausted your administrative remedies. The motion will, if granted, result in the dismissal of your case. When a party you are suing makes a motion to dismiss for failure to exhaust, and that motion is properly supported by declarations (or other sworn testimony) and/or documents, you may not simply rely on what your complaint says. Instead, you must set out specific facts in declarations, depositions, answers

---

[1] The following notice is adapted from the summary judgment notice to be given to pro se prisoners as set forth in Rand v. Rowland, 154 F.3d 952, 963 (9th Cir. 1998) (en banc). See Wyatt v. Terhune, 315 F.3d at 1120 n.14.

to interrogatories, or documents, that contradict the facts shown in the defendant's declarations and documents and show that you have in fact exhausted your claims. If you do not submit your own evidence in opposition, the motion to dismiss, if appropriate, may be granted and the case dismissed.

      b.     In the event defendants file a motion for summary judgment, the Ninth Circuit has held that the following notice should be given to plaintiffs:

> The defendants have made a motion for summary judgment by which they seek to have your case dismissed. A motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure will, if granted, end your case.
> Rule 56 tells you what you must do in order to oppose a motion for summary judgment. Generally, summary judgment must be granted when there is no genuine issue of material fact--that is, if there is no real dispute about any fact that would affect the result of your case, the party who asked for summary judgment is entitled to judgment as a matter of law, which will end your case. When a party you are suing makes a motion for summary judgment that is properly supported by declarations (or other sworn testimony), you cannot simply rely on what your complaint says. Instead, you must set out specific facts in declarations, depositions, answers to interrogatories, or authenticated documents, as provided in Rule 56(e), that contradict the facts shown in the defendants' declarations and documents and show that there is a genuine issue of material fact for trial. If you do not submit your own evidence in opposition, summary judgment, if appropriate, may be entered against you. If summary judgment is granted in favor of defendants, your case will be dismissed and there will be no trial.

See Rand v. Rowland, 154 F.3d 952, 963 (9th Cir. 1998) (en banc). Plaintiff is advised to read Rule 56 of the Federal Rules of Civil Procedure and Celotex Corp. v. Catrett, 477 U.S. 317 (1986) (holding party opposing summary judgment must come forward with evidence showing triable issues of material fact on every essential element of his claim). Plaintiff is cautioned that failure to file an opposition to defendants' motion for summary judgment may be deemed to be a consent by plaintiff to the granting of the motion, and granting of judgment against plaintiff without a trial. See Ghazali v. Moran, 46 F.3d 52, 53-54 (9th Cir. 1995) (per curiam); Brydges v. Lewis, 18 F.3d 651, 653 (9th Cir. 1994).

      9.     Defendants shall file a reply brief no later than **fifteen (15) days** after plaintiff's opposition is filed.

      10.     The motion shall be deemed submitted as of the date the reply brief is due. No hearing will be held on the motion unless the court so orders at a later date.

///

11.     All communications by the plaintiff with the court must be served on defendants, or defendants' counsel once counsel has been designated, by mailing a true copy of the document to defendants or defendants' counsel.

12.     Discovery may be taken in accordance with the Federal Rules of Civil Procedure. No further court order is required before the parties may conduct discovery.

For plaintiff's information, the proper manner of promulgating discovery is to send demands for documents or interrogatories (questions asking for specific, factual responses) directly to defendants' counsel. See Fed. R. Civ. P. 33-34. The scope of discovery is limited to matters "relevant to the claim or defense of any party . . ." See Fed. R. Civ. P. 26(b)(1). Discovery may be further limited by court order if "(i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(2). <u>In order to comply with the requirements of Rule 26, before deciding to promulgate discovery plaintiff may find it to his benefit to wait until defendants have filed a dispositive motion which could include some or all of the discovery plaintiff might seek.</u> In addition, no motion to compel will be considered by the court unless the meet-and-confer requirement of Rule 37(a)(2)(B) and N.D. Cal. Local Rule 37-1 has been satisfied. Because plaintiff is incarcerated, he is not required to meet and confer with defendants in person.
Rather, if his discovery requests are denied and he intends to seek a motion to compel he must send a letter to defendants to that effect, offering them one last opportunity to provide him with the sought-after information.

///
///
///
///

1        13.    It is plaintiff's responsibility to prosecute this case. Plaintiff must keep the court
2  and all parties informed of any change of address and must comply with the court's orders in a
3  timely fashion. Failure to do so may result in the dismissal of this action for failure to prosecute
4  pursuant to Federal Rule of Civil Procedure 41(b).
5        IT IS SO ORDERED.
6  DATED:   5/23/08          *Ronald M. Whyte*
                                RONALD M. WHYTE
7                                  United States District Judge